## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MINDY M. HOUCK,

      Plaintiff,

      v.                                                          Case No. 15-9586-JAR-TJJ

CORRECTIONS CORPORATION,
OF AMERICA,

      Defendant.

## MEMORANDUM AND ORDER

Plaintiff Mindy M. Houck filed this action seeking monetary damages against Defendant,

Corrections Corporation of America ("CCA"), alleging that CCA was negligent in failing to

provide a safe environment for Plaintiff in her prison cell.  Plaintiff also alleges that her privacy

has been invaded by CCA because it disseminated personal information regarding Plaintiff's

minor child to other inmates.  This matter is before the Court on Defendant's Motion For

Summary Judgment (Doc. 23) and Motion to Exclude Expert Testimony (Doc. 24).  Plaintiff

filed a response (Doc. 26); no reply memorandum was filed.  For the reasons explained in detail

below, the Court grants in part Defendant's motion for summary judgment on the negligence

claim, directs further briefing on the invasion of privacy claim under Fed. R. Civ. P. 56(f), and

denies its motion to exclude expert as moot.

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In

---

[1]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence regarding an essential element of the other party's claim.[7]  Where the movant bears the burden of proof on a claim or defense, a more stringent standard applies: it "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

---

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 2004)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (internal quotations omitted).

[6]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citing *Celotex*, 477 U.S. at 323).

"set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party

may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must

"set forth specific facts that would be admissible in evidence in the event of trial from which a

rational trier of fact could find for the nonmovant."[11]  The facts "must be identified by reference

to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]  Rule

56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set

forth such facts as would be admissible in evidence.[13]  The nonmoving party cannot avoid

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts,

or speculation.[14]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it

is an important procedure "designed to secure the just, speedy and inexpensive determination of

every action."[15]  In responding to a motion for summary judgment, "a party cannot rest on

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the

mere hope that something will turn up at trial."[16]

---

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]Fed. R. Civ. P. 56(c)(1); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted); *see also Celotex*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses").

[15]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[16]*Conway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## II.     Uncontroverted Facts

The following material facts are uncontroverted, stipulated to for the purposes of summary judgment, or viewed in the light most favorable to Plaintiffs.  Defendant CCA is a private Maryland corporation under contract with the United States Marshals Service to detain and house federal prisoners.  Plaintiff was a federal prisoner detained and housed at the CCA facility in Leavenworth, Kansas.  She was released from CCA custody on October 16, 2015. CCA and its employees are private parties.

At the time of her arrival at CCA, Plaintiff did not request a bottom bunk bed due to a physical condition.  Plaintiff was not provided with a ladder or other means to access her second-tier bunk bed by CCA.  Instead, she claims that she was instructed to use storage boxes or totes to climb up to her bunk.  On November 13, 2014, Plaintiff fell while attempting to access her top bunk bed and suffered injuries to her face and arm.  Plaintiff never requested a bottom bunk due to a physical condition prior to her fall.

Plaintiff made several complaints about her pain level and medication related to the fall, which she claims CCA failed to address.  CCA's "Inmate Handbook" does not contain a procedure for inmates to request a bottom bunk, nor does it mention how inmates are to access second-tier bunks.

The Inmate Handbook states that inmates may not write to other inmates at CCA without prior approval.  It further states that "[a]ll outgoing mail is subject to being searched and reviewed at any time with the exception of special/legal correspondence, which will be searched and reviewed in the inmate's presence."[17]  Likewise, incoming mail "will also be inspected and searched without inmate presence prior to the inmate receiving general correspondence."

---

[17]Doc. 23, Ex. B at 18.

From July 31 to August 6, 2015, disciplinary reports were disseminated by CCA staff to four inmates charged with the unauthorized use of mail or telephone.  The reports described the offense as:

> On the above date and time during the course of reviewing and searching of the Incoming/Outgoing mail it was found that you are writing and receiving mail from another inmate by way of three way correspondence or maliputating [sic] the return address and sender address.  It was found that you are not approved to correspond with the inmate you  are attempting to correspond with.  You have received a rejection notifying you that this is against the facility rules as stated in your inmate handbook. [lists the name and address of Plaintiff's minor daughter].[18]

## III.   Discussion

### A.  Exhaustion

CCA argues that Plaintiff failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  That provision of the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[19]  The United States Supreme Court has strictly interpreted this provision, holding that available administrative remedies must be exhausted prior to an inmate's filing of a § 1983 action or other federal claim based on conditions of confinement, even if the available remedies appear to be futile.[20]

In this case, it is undisputed that Plaintiff's claims are not brought under § 1983 or other federal law.  Instead, both claims are brought under Kansas state common law tort theories, and

---

[18]Doc. 23, Ex. J.

[19]42 U.S.C. § 1997e(a); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1206 (10th Cir. 2003).

[20]*See Booth v. Churner*, 532 U.S. 731, 740 n.6 (2001) ("We stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

are before this Court on the basis of diversity jurisdiction.[21]   Although CCA contends that the

PLRA should apply to Plaintiff's state law negligence and invasion of privacy claims, it cites no

controlling authority to support its argument.   Because CCA has failed to meet its burden on this

affirmative defense, summary judgment is denied.

### B.  Negligence

Plaintiff claims that CCA was negligent in failing to provide her a ladder to access her

second-tier bunk bed, and by "exposing [Plaintiff] to the unsafe and dangerous practice of

accessing her second-tier bunk by climbing up unsecured storage boxes and/or totes."   In order to

establish liability for negligence against a defendant, including a governmental agency, a

plaintiff must establish:  (1) the defendant owed a duty to the plaintiff; (2) the duty was

breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff

sustained damages.[22]   "Whether a duty exists is a question of law.  Whether the duty has been

breached is a question of fact."[23]   "Although summary judgment is rarely appropriate in

negligence cases, 'it is proper if the plaintiff fails to provide evidence of an element essential to

the case.'"[24]   CCA contends that Plaintiff has alleged no set of facts that show CCA had actual or

constructive knowledge of the risk of harm to Plaintiff, and thus had no duty to protect Plaintiff.

As a general rule, there is no duty to act for the protection of others.[25]  The Restatement

(Second) of Torts recognizes two exceptions to this rule: (1) when a special relationship exists

---

[21]28 U.S.C. § 1332.

[22]*Thomas v. Bd. of Shawnee Cnty. Comm'rs*, 262 P.3d 336, 346 (Kan. 2011).

[23]*Id.*

[24]*Id.* (quoting *Hammig v. Ford*, 385 P.2d 977, 980 (Kan. 1990)).

[25]*Rogers v. Bd. of Comm'rs of Shawnee Cnty. ex rel. Shawnee Cnty.*, 345 P.3d 295 (Table), 2015 WL 1514019, at *4  (Kan. Mar. 27, 2015) (citing Restatement (Second) of Torts § 314 (1964)).

between the actor and the third person and (2) when a special relationship exists between the actor and the other.[26]

The Kansas Court of Appeals recently held that "the duty of a jailer to exercise reasonable care to those in custody is triggered by actual or constructive knowledge of an unreasonable risk that the prisoner will be subjected to physical harm."[27]  In *Rogers v. Board of Commissioners of Shawnee County*, the plaintiff fell while attempting to access her top bunk at the Shawnee County Adult Detention Center.[28]  Prior to her assignment to an upper bunk bed, the plaintiff advised corrections officers that she suffered from diabetes and neuropathy in both feet, which made it impossible for her to climb up or down from the upper cell bunk bed.[29]  After her assignment, the corrections officers refused the plaintiff's request to have a mattress on the floor and told her there was no other cell available for her to be assigned a lower bunk bed.[30]  The court reversed the district court's entry of summary judgment in favor of the defendant, finding that the evidence showed that the booking officer who assigned the plaintiff to an upper bunk should have known that the plaintiff's medical condition was such that assigning her to an upper bunk would create an unreasonable risk of harm.[31]  Likewise, based on the plaintiff telling a corrections officer that she could not safely get in and out of an upper bunk because she suffered from diabetes and neuropathy in her feet, the court concluded that a jury could find that

---

[26]Restatement (Second) of Torts § 315.

[27]*Rogers,* 2015 WL 1514019, at *5 (citing *Thomas*, 262 P.3d at 339).

[28]*Id.* at *2.

[29]*Id.* at *6

[30]*Id.*

[31]*Id.* at *11.

the corrections officer knew or should have known that keeping the plaintiff assigned to an upper bunk would create an unreasonable risk of harm.[32]

By contrast, CCA argues that Plaintiff alleges no physical limitations that would impede her ability to get into and out of the top bunk, nor any previous similar incidents that would put Defendants on notice of a risk of harm, and that the administrative decision not to provide ladders for CCA's bunk beds is based on policy that should be afforded deference. Instead, CCA urges, Plaintiff relies on the mere fact that the bunk beds had no ladders to support her claim that CCA knew or should have known of a potential risk of fall. Plaintiff counters that there were no ladders provided on the bunk beds, and that she was instructed to access her top bunk using unsecured storage boxes and totes. Plaintiff's citation in support merely references her unverified complaint, however, and does not state who instructed her to use the boxes to access the top bunk or whether CCA was aware that she was doing so. But as *Rogers* instructs, the relevant inquiry is whether CCA knew or should have known that Plaintiff was put at an unreasonable risk of harm. The record before the Court is simply devoid of such evidence. Thus, even construing the facts alleged in the light most favorable to Plaintiff, there is nothing in the record to support her claim that Defendant knew or should have known that Plaintiff was climbing on unsecured boxes in order to access her bunk, or that she was otherwise subjected to an unreasonable risk of physical harm by being assigned to a top bunk. Because Plaintiff has failed to raise a genuine issue of material fact on her negligence claim, summary judgment is granted in favor of CCA.[33]

---

[32]*Id.*

[33]The Court does not reach Defendant's alternative argument that Plaintiff's failure to designate an expert on the standard of care is fatal to her claim of negligence. Further, as Plaintiff did not designate an expert witness, Defendant's Motion to Exclude Expert Witness (Doc. 24) is denied as moot.

### C.  Invasion of Privacy

Plaintiff further claims that CCA invaded her privacy during her incarceration by publishing information about her minor child on four disciplinary reports disseminated to third-party inmates, and that this invasion of privacy caused her physical and mental distress.  Kansas law recognizes causes of action for the four "invasion of privacy" tort theories set forth in the Restatement (Second) of Torts.[34]  Defendant bases its motion for summary judgment on the assumption that Plaintiff's claim is based on Restatement § 652D, which sets out a claim of publicity given to private life by showing that a person gave "publicity to a matter concerning the private life of another" and that matter would be highly offensive to a reasonable person" and not a "legitimate concern to the public."[35]  Under this theory, the information must be disseminated to the public at large,[36] and CCA argues that Plaintiff has failed to establish that the disciplinary reports were made public knowledge outside the confines of CCA.

In her response, however, Plaintiff clarifies that her invasion of privacy claim is based on the "intrusion upon seclusion" theory.  Section § 625B defines that theory as "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable man."[37]  The Kansas Supreme Court has recognized a cause of action based on this theory, holding that to prevail upon such a claim, it is necessary to establish two factors: "[f]irst, something in the nature of an intentional interference

---

[34]*Frye v. IBP*, 15 F. Supp. 2d 1032, 1040 (D. Kan. 1998) (applying Kansas law and citing Restatement (Second) of Torts §§ 652B–652E (1977)).  These four theories are: intrusion upon seclusion, appropriation of name or likeness, publicity given to private life, and publicity placing a person in false light.

[35]Restatement (Second) of Torts § 652D (1977).  The Pretrial Order does not specify which theory is the basis of Plaintiff's invasion of privacy claim.  Doc. 25 at 4.

[36]*Id.*

[37]*Froelich v. Adair*, 516 P.2d 993, 995–96 (Kan. 1973) (quoting Restatement (Second) of Torts § 652B (1977)).

in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns; and second, that the intrusion would be highly offensive to a reasonable person."[38] The essence of this claim "is that an individual's right to be left alone is interfered with by defendant's physical intrusion, or by an intrusion of defendant using his or her sensory facilities."[39]  As Comment b to § 652B of the Restatement (Second) of Torts explains:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home.  It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires.  It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.  The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

"While liability for the intrusion does not require publication of a plaintiff's private affairs, it does require that the defendant place himself physically, or by means of his senses, within plaintiff's zone of privacy."[40]  "Consequently, it is both the manner of intrusion as well as the nature of the information acquired that must rise to the level of being highly offensive to a reasonable person."[41]  The defendant's motive or malice is not an element, "for liability turns upon the defendant's actions as opposed to motives."[42]

It appears to the Court that a reasonable jury would not conclude that Plaintiff suffered an intrusion upon seclusion within the meaning of § 652B of the Restatement.  The record indicates

---

[38]*Werner v. Kliewer*, 710 P.2d 1250, 1255 (Kan. 1985) (citing *Froelich*, 516 P.2d at 995).

[39]*Peterson v. Moldofsky*, No. 07-2603-EFM, 2009 WL 3126229, at *3 (D. Kan. Sept. 29, 2009) (quoting *Finlay v. Finlay*, 856 P.2d 183, 189 (Kan. Ct. App. 1993)).

[40]*Finlay*, 856 P.2d at 190.

[41]*Werner*, 710 P2d at 1256.

[42]*Froelich*, 516 P.2d at 997.

that the inmates were using the name and address of Plaintiff's minor daughter to correspond with other inmates, and that information was obtained by CCA via the monitoring of incoming and outgoing inmate mail.  There is no allegation that CCA intruded physically, or by means of its senses, into the presence of Plaintiff.  Indeed, inmates do not have a reasonable expectation of privacy in their mail while incarcerated at CCA, as clearly outlined in the Inmate Handbook.  Plaintiff does not challenge CCA's mail inspection policies.  Instead, Plaintiff alleges that the nature of information disseminated in the disciplinary reports was highly offensive to her as a parent.  But the record further suggests that this information had already been obtained and used by the inmates involved.

Because CCA did not reply to Plaintiff's clarification of the theory of her invasion of privacy claim, however, Plaintiff is entitled to "notice and a reasonable time to respond" before the Court may grant summary judgment on this basis.[43]  Accordingly, Plaintiff is directed to respond no later than **fourteen (14)** days from the entry of this Order, stating why summary judgment should not be granted to Defendant on her invasion of privacy claim under the theory of intrusion upon seclusion; Defendant shall have **fourteen (14)** days from the date of Plaintiff's submission to file a reply.  In the interim, the case shall be removed from the May 1, 2017 trial calendar, pending review of the supplemental submissions.

**IT IS SO ORDERED.**

Dated: <u>January 24, 2017</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[43]Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may . . . grant the motion on grounds not raised by a party").